IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| FELOGINA BERMUDEZ,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF NEW JERSEY,<br><br>Defendant. | Civil No. 19-21637 (RBK/KMW)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant's Motion to Dismiss (Doc. 2). For the reasons expressed herein, Defendant's motion is GRANTED.

## I.    BACKGROUND[1]

This action arises out of Plaintiff Felogina Bermudez's employment with and subsequent termination from Defendant Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey ("Defendant"). Plaintiff alleges that, after twenty-seven years of employment, Defendant terminated her because of her age and in retaliation for her reporting of various fraudulent activities. (Doc. 1-1 ("Compl.") ¶48.)

Plaintiff began working for Defendant in November 1991; she was promoted several times throughout her employment and received high scores on her performance reviews in 2016 and 2017. (Compl. ¶¶11, 41–42.) At the time of her firing, Plaintiff was a Medical Policy Analyst. (*Id.*

---

[1] On this motion to dismiss, the Court accepts as true the well-pleaded facts in the operative Complaint (Doc. 1-1) and construes them in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

1

¶11.) Within Plaintiff's department, there were two other Medical Policy Analysts and two Medical Utilization Analysts, all of whom performed essentially the same tasks. (*Id.* ¶30.) All employees within this division reported to Alicia Springer, the manager of the Service Division. (*Id.* ¶11.)

Beginning in early 2018, Plaintiff began to question some of the actions her superiors took. (Compl. ¶¶11–13.) According to Plaintiff, both Ms. Springer and Elizabeth Ferrara, a Medical Utilization Analyst, gave directives that contradicted federal medical rules and regulations. (*Id.* ¶12.) Plaintiff recounts several incidents from April to August 2018 where, under the guidance of Ms. Springer and Ms. Ferrara, Defendant gave lifetime approval for high dollar specialty drugs, approved opioid medications indefinitely, and approved specialty drug use for patients who did not have recent or sufficient medical records. (*Id.* ¶13.) Plaintiff discussed her concerns about this allegedly fraudulent behavior with Ms. Springer and Ms. Ferrara on several occasions. (*Id.* ¶¶14–17.) During a May 14, 2018 phone call with Ms. Springer, Plaintiff was advised not to report any fraud directly, but to submit any concerns to Ms. Springer. (*Id.* ¶15.) On August 2, 2018, Plaintiff was given a poor score on her mid-year performance review despite her productivity being above the team average. (*Id.* ¶16.) During this review, Ms. Springer told Plaintiff, "I don't expect you to be here by the end of the year." (*Id.*)

In the fall of 2018, Plaintiff was reprimanded for insubordination and received a written warning. (Compl. ¶¶20, 22.) On November 29, 2018, Plaintiff reported her concerns regarding the allegedly fraudulent behavior. (*Id.* ¶23.) On December 3, 2018, Ms. Springer discontinued the work-from-home privileges that Plaintiff had enjoyed since 2007. (*Id.* ¶45.) Three days later, Defendant terminated Plaintiff's employment, citing reorganization. (*Id.* ¶25.) Out of the three Medical Policy Analysts in her department, Plaintiff was the only one fired; however, nineteen

total employees were terminated. (*Id.* ¶¶25, 35; Compl. Ex. F at 32–40.) Plaintiff was told she was selected for termination after Defendant's consideration of "business needs, job performance, skill set, and position elimination." (*Id.* ¶35.) At the time of her termination, Plaintiff was the oldest and most experienced Medical Policy Analyst reporting to Ms. Springer. (*Id.* ¶¶32, 39.)

On December 6, 2018, Plaintiff was given a four-page form titled Waiver and Release Agreement ("the Agreement"). (Compl. ¶¶26–27; Compl. Ex. D at 21.) Plaintiff signed the Agreement on January 10, 2019. (Compl. ¶26.) Under the terms of the Agreement, Plaintiff waived and released all claims arising out of her employment and separation through the date of the agreement. (Compl. Ex. D at 21.) In return, the Agreement stated that Plaintiff would receive a $57,173 lump sum severance payment. (*Id.*) On May 30, 2019, Defendant hired a new, younger employee to perform Plaintiff's previous job. (Compl. ¶27.)

On November 6, 2019, Plaintiff filed suit *pro se* against Defendant in the Superior Court of New Jersey, alleging violations of the Conscientious Employee Protection Act ("CEPA"), the Age Discrimination in Employment Act ("ADEA"), and the New Jersey Law Against Discrimination ("NJLAD"). (Compl. ¶¶49–64.) Plaintiff alleges that Defendant impermissibly terminated her based on her age, as well as in retaliation for her reporting allegedly fraudulent activity. (*Id.*) On December 19, 2019, Defendant removed the matter to this Court, and on December 20, 2019 it filed a motion to dismiss. (Docs. 1, 2.)

## II.     LEGAL STANDARD

When deciding a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the complaint. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The Court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the plaintiff. *Phillips v. Cnty of Allegheny*,

3

515 F.3d 224, 228 (3d Cir. 2008). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The inquiry is not whether [a plaintiff] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id*.

"When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are 'integral to or explicitly relied upon in the complaint' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Mills v. Ethicon*,

4

*Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J. 2019) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, when "evaluating a motion to dismiss, [a court] may consider documents that are attached to or submitted with the complaint"). "Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment," since a "plaintiff obviously is on notice of the contents [of] the document, and the need for a chance to refute evidence is greatly diminished." *Mills*, 406 F. Supp. at 372 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993) (internal quotations omitted)).

## III. DISCUSSION[2]

In moving to dismiss, Defendant argues Plaintiff released all of the claims she now brings when she signed the Agreement in exchange for a severance payment. (Doc. 2-1 ("Def. Mot.") at 5.) In response, Plaintiff argues that the Agreement is invalid and unenforceable. (Doc. 8 ("Pl. Resp.") at 3.)

### A. NJLAD and CEPA Claims

"In the Third Circuit, it is settled law that an employee may waive claims against an employer so long as the waiver is made 'knowingly and willfully.'" *Garofola v. Vela Research USA, Inc.*, Civ. No. 14-2505, 2015 WL 3866238, at *4 (D.N.J. June 19, 2015) (quoting *Chuchara v. Gai–Tronics Corp.*, 129 F. App'x 728, 730 (3d Cir. 2005)). To determine whether a waiver or release of CEPA and NJLAD claims is valid, the Third Circuit requires courts to apply a "totality

---

[2] As a preliminary matter, the Court notes that it considers the documents that Plaintiff attached to her Complaint in deciding Defendant's motion. *Buck*, 452 F.3d at 260 (noting that, when "evaluating a motion to dismiss, [a court] may consider documents that are attached to or submitted with the complaint").

The Court further notes that, because Plaintiff is proceeding *pro se*, she is held to "less stringent standards" than she would be if represented by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted).

of the circumstances" test. *See Geraghty v. Ins. Servs. Office, Inc.*, 369 F. App'x 402, 406 (3d Cir. 2010) (applying the "totality of the circumstances" test to waiver of a CEPA claim); *see also Francois v. 160 Frontage Rd., LLC*, Civ. No. 19-06787, 2020 WL 907771, at *2 (D.N.J. Feb. 24, 2020) ("The effectiveness of a NJLAD waiver is judged under the totality of the circumstances.").

This "totality of the circumstances" test considers the following seven factors:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation of the release before signing it; (4) whether plaintiff knew or should have known her rights upon execution of the release before signing it; (5) whether plaintiff was encouraged to seek, or in fact received, benefit of counsel; (6) whether there was opportunity for negotiation of the terms of the agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled to by law.

*Geraghty*, 369 F. App'x at 406. The Court addresses each factor separately below.

### i. Clarity and specificity of the release language

"Courts have routinely held that a release agreement is sufficiently clear and specific when it releases an entity from any and all claims, lists various causes of action, and states that the waiver is 'including but not limited to' those claims." *Garofola*, 2015 WL 3866238, at *4 (citing *Geraghty,* 369 F. App'x at 406). Defendant argues that the four-page Agreement satisfies this factor, as it is concise and explains with specificity the scope of the claims being released. (Def. Mot. at 10.)

The language in the Agreement states, in relevant part:

> In consideration of the payment described herein, Bermudez hereby releases and forever discharges Horizon from any and all actions, causes of actions, suits, claims, charges or complaints which he/she may have or claim to have as a result of anything that has happened up to now, including his/her employment, the terms or conditions of his/her employment, and/or his/her separation of employment from Horizon. This agreement includes all claims or causes of action asserted or which could have been asserted in any actions that could have been filed, in any court or administrative agency at any time up to and including the effective date of this Waiver and Release Agreement.

> Bermudez acknowledges that this Agreement includes but is not limited to claims which have or could have arisen prior to the date of his/her execution of this Agreement for alleged discrimination based upon age, race, color, sex, sexual orientation, marital status, religion, national origin, handicap, disability, or retaliation, or any other characteristic protected by federal, state, or local law, including any claim, asserted or unasserted, which could arise under <u>Title VII of the Civil Rights Act of 1964</u>, as amended; <u>the Civil Rights Act of 1991</u>; the <u>Equal Pay Act of 1963</u>; the <u>Age Discrimination in Employment Act of 1967</u>, as amended; the <u>Americans With Disabilities Act of 1990</u>; the <u>Employee Retirement Income Security Act of 1974</u>, as amended; the <u>Fair Labor Standards Act</u>; the <u>Family and Medical Leave Act of 1993</u>; the <u>New Jersey Law Against Discrimination</u>; the <u>New Jersey Civil Rights Act</u>; the <u>New Jersey Family Leave Act</u>; the <u>New Jersey and Federal Conscientious Employee Protection Acts</u>; the <u>Worker Adjustment and Retraining Notification Act of 1988</u>; <u>New Jersey WARN Act</u>, the <u>New Jersey Wage and Hour Law</u>; the <u>New Jersey Equal Pay Act</u>; and any other federal, state or local laws, rules or regulations, whether equal employment opportunity laws, rules or regulations.
>
> Bermudez acknowledges that this agreement also includes any and all claims for wrongful discharge in breach of contract (whether express or implied) and implied covenants of good faith and fair dealing, breach of any employee handbook or employee manual provisions, violation of any unwritten policies or practices and all claims in tort (including but not limited to, claims for misrepresentation, defamation, interference with contract or prospective economic advantage, infliction of emotional distress and negligence) and violations of public policy.

(Compl. Ex. D at 21–22) (emphasis in original).

The Court finds that the language of the Agreement here is similar, if not identical, to those waiver and release agreements routinely enforced by courts, as it sets out specific claims it waives and states that it "includes but is not limited to" these claims. *See, e.g., Recchia v. Kellogg Co.*, 951 F. Supp. 2d 676, 687 (D.N.J. 2013) (enforcing a waiver of claims after finding that the waiver's "language leaves no doubt as to the nature of the claims that [the plaintiff] waived in exchange for severance pay and benefits"); *Yousef v. Capital One Servs., Inc.*, Civ. No. 11-1687, 2011 WL 3739362, at *4 (D.N.J. Aug. 24, 2011) (enforcing a release agreement where its language "provided the Plaintiff with a clear, thorough, and definitive explanation as to what claims were released in consideration for the . . . severance pay he received").

7

Plaintiff argues that the waiver inappropriately includes claims that arose after the date on which she signed it. Namely, she notes that, after she signed the waiver, Defendant hired a younger individual to replace her, and argues that the Agreement cannot waive her right to sue over this later event. (Pl. Resp. at 6.) In *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 287 (3d Cir. 2003), the Third Circuit rejected this exact argument. The plaintiff in *Wastak* executed a release agreement upon being terminated by his employer; nine months later, he learned that his employer replaced him with a younger employee, and claimed that it was not until this point that he was aware of his claim for age discrimination. *Id*. Rejecting this argument, the Third Circuit held that the plaintiff's "injury was complete and discovered when [his employer] terminated him." *Id.*

Similarly here, Plaintiff's injuries were "complete and discovered" when Defendant terminated her, and she cannot argue that her claims accrued once Defendant hired a younger employee. *Wastak*, 342 F.3d at 287. Thus, this factor is met.

### ii. Plaintiff's education and business experience

"Courts generally view persons with college educations, professional degrees, business experience, or some combination thereof, as having the requisite 'education and experience' to understand such a release." *Yousef*, 2011 WL 3739362, at *5. Here, Plaintiff is certified as a foreign doctor by the Educational Commission for Foreign Medical Graduates, and has passed U.S. medical licensure exams. (Compl. ¶38.) She is highly educated, and received numerous promotions throughout the 27 years she worked in the medical field for Defendant. (Compl. ¶41.) Accordingly, the Court finds that Plaintiff has the requisite education and experience to understand the Agreement.

### iii. Amount of time Plaintiff had for deliberation

When considering whether adequate time was given to consider a release, "[c]ourts focus on the time provided rather than the time actually taken to consider a release." *Recchia*, 951 F. Supp. 2d at 688. The Third Circuit has held that twenty-one days is a sufficient amount of time for an employee to contemplate whether or not to sign a waiver and release agreement. *Cuchara v. Gai-Tronics Corp.*, 129 Fed. App'x 728, 731 (3d Cir. 2005).

Here, the Agreement provided Plaintiff with forty-five days to review and sign the Agreement, and an additional seven days after execution to revoke the Agreement before it took effect. (Compl. Ex. D at 24.) In reality, Plaintiff took thirty-five days to sign and return the Agreement. (Compl. ¶26.) While the Court must look to the amount of time that Plaintiff could have taken to sign the agreement as opposed to the amount of time Plaintiff actually took to sign the agreement, both forty-five days and thirty-five days are well beyond the amount of time necessary for the Court to find that Plaintiff had sufficient time to review and sign the Agreement. *See Cuchara*, 129 Fed. App'x at 728 (finding twenty-one days a sufficient time period for an employee to determine whether to sign a release). Because Plaintiff had sufficient time to review the Agreement, this factor is met.

### iv. Whether Plaintiff knew or should have known her rights

Defendant argues that Plaintiff should have known of her rights, since she made complaints prior to termination, and because the Agreement lays out the statutes and types of claims being released. (Def. Mot. at 11.) Plaintiff argues in response that she did not know of her rights, as she initially believed she was being let go because her position was being eliminated, but later came to believe that it was due to retaliation and age discrimination. (Pl. Resp. at 6.)

This factor typically weighs towards waiver when a release agreement contains an explicit provision explaining which claims are waived and which are not. *Yousef*, 2011 WL 3739362 at *5.

9

As set out above, the Agreement here defines the claims being released; in a separate section, it also specifically states which rights are being retained, such as the opportunity to file a charge with the Equal Employment Opportunity Commission. (Compl. Ex. D at 22.) Thus, the Court finds that this factor is met.

### v. Whether Plaintiff was encouraged to seek counsel

In determining if this factor is met, courts look towards whether a plaintiff was advised to consult with counsel, rather than whether a plaintiff actually received the benefit of counsel. *Recchia,* 951 F. Supp. 2d at 689. This factor is typically satisfied when the release agreement at issue encourages a plaintiff to consult with counsel before signing. *Id.*

The Agreement here clearly advised Plaintiff to consult with an attorney prior to execution. (Compl. Ex. D at 24.) It states that Plaintiff has forty-five days to review the Agreement and to "consult with an attorney regarding the terms and effect of [the] Agreement." (*Id.*) This is sufficient to find that this factor is met. *Recchia*, 951 F. Supp. 2d at 689.

### vi. Whether there was opportunity for negotiation

When analyzing this factor, courts look to whether the plaintiff had the opportunity to negotiate, and not whether the plaintiff actually took advantage of the opportunity. *Sauter v. Federal Home Loan Bank of NY*, Civ. No. 08-899, 2009 WL 2424689, at *7 (D.N.J. Aug. 5, 2009). In cases where the plaintiff did not attempt to negotiate, courts find this factor to support waiver so long as the plaintiff was given sufficient time in which she could have attempted to negotiate. *Yousef*, 2011 WL 3739362, at *7 (finding that, although the plaintiff made no attempt to negotiate, "[g]iven the length of time in which [the plaintiff] had to consult with counsel before signing the release . . . [the plaintiff] has had sufficient opportunity to negotiate the terms of the release").

Here, Plaintiff does not assert that she made any attempt to negotiate the terms of the Agreement. However, because she had forty-five days in which she could have done so, this factor is satisfied.

### vii. Whether proper consideration was given in exchange for the waiver

Finally, the Court considers whether Plaintiff received adequate consideration in exchange for executing the Agreement. Plaintiff argues that she was already entitled to the $57,173 severance payment she received in exchange for signing the Agreement, and that the severance therefore cannot be considered adequate consideration. (Pl. Resp. at 4.) Defendant argues that Plaintiff's own exhibit—a document detailing Horizon's general severance pay policies—explains that severance pay is "subject to the execution and non-revocation of a waiver and release agreement." (Compl. Ex. E at 29.)

Under Defendant's severance policy, which has existed since December 2002 and was most recently updated in June 2018, Plaintiff would not receive any severance pay unless she signed a waiver and release agreement. (Compl. Ex. E at 26–29.) Thus, Plaintiff's argument that she was already entitled to severance pay fails—it is clear from the face of her Complaint and attached exhibits that she received severance only because she executed the Agreement. The Court finds that Plaintiff received proper consideration in exchange for her waiver of claims. *Recchia,* 951 F. Supp. 2d at 690–691 (finding that severance pay an employee was not otherwise entitled to constituted meaningful consideration in exchange for release of claims).

After examining all of the applicable factors under the totality of the circumstances test, the Court finds that Plaintiff's execution of the Agreement was knowing and voluntary. Therefore, Defendant's motion to dismiss is granted as to Plaintiff's NJLAD and CEPA claims.

### B. ADEA Claim

Plaintiff argues that, even if her NJLAD and CEPA claims were waived by the Agreement, the Agreement nonetheless fails to waive her ADEA claim because it does not meet the additional requirements imposed by the Older Workers Benefit Protection Act ("OWBPA"). (Pl. Resp. at 5.)

"The OWBPA is an amendment to the ADEA that Congress passed . . . to protect older workers from being coerced into releasing their rights under the ADEA." *Recchia*, 951 F. Supp. 2d at 691 (citing *Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1534 (3d. Cir. 1997). In pursuit of this aim, it mandates specific requirements that a waiver agreement must meet in order to be enforced under the ADEA. *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998). These requirements are unqualified and without exception—if an waiver fails to meet one of the requirements, the waiver and release agreement is not knowing and voluntary regarding the ADEA claim and cannot be enforced. *Id*. The requirements, set forth under 29 U.S.C. § 626(f), dictate that:

> (1) An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary. . . . [A] waiver may not be considered knowing and voluntary unless at a minimum—
>
> > (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual . . . ;
> >
> > (B) the waiver specifically refers to rights or claims arising under this chapter;
> >
> > (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;
> >
> > (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
> >
> > (E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

> (F) (i) the individual is given a period of at least 21 days within which to consider the agreement; or (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;
>
> (G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;
>
> (H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer . . . informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to—
>
>> (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and
>>
>> (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f)(1).

Many of these requirements are parallel to those under the totality of the circumstances test. *Recchia*, 951 F. Supp. 2d at 692 (noting that "several [OWBPA] requirements are substantially similar to the totality of the circumstances factors" and conducting a single analysis for similar factors). Consequently, the requirements contained in § 626(f)(1)(A), (B), (D), (E), (F), and (G) are met because the above analysis of Plaintiff's NJLAD and CEPA claims found that: the Agreement is sufficiently clear and specific; the Agreement provides meaningful consideration in the form of severance pay; the Agreement specifically lists the "Age Discrimination in Employment Act of 1967, as amended" in its list of claims that Plaintiff waives under the agreement; Plaintiff was advised in writing to consult with an attorney; Plaintiff had forty-five days to consider the Agreement; and there was a seven-day period after execution during which

13

Plaintiff could have revoked the agreement before it became effective. Therefore, only § 626(f)(1)(C) and (H) require separate analysis.

As to § 626(f)(1)(C), Plaintiff again contends that the Agreement impermissibly waived future claims, arguing that her ADEA claim arose when Defendant hired a younger employee to replace her. (Pl. Resp. at 5.) However, as explained above, Plaintiff's "injury was complete and discovered when [her employer] terminated [her]." *Wastak*, 342 F.3d at 287. The text of the Agreement also clarifies that it does not waive future claims, as it states that it waives claims Plaintiff may have "as a result of anything that has happened up to now," and that it covers claims Plaintiff "had or may have against [Defendant] through the date of" the Agreement. (Compl. Ex. D at 21.) The Court accordingly finds that § 626(f)(1)(C) is met, as the Agreement does not waive rights or claims arising after the waiver was executed.

As to the final requirement, § 626(f)(1)(H), Plaintiff argues that this factor is not met because the decision to terminate her was based on the subjective opinion of her manager, rather than any objective measurements. The requirements under § 626(f)(1)(H) come into focus when a plaintiff is terminated as part of an "employment termination program," which "takes place when a group or class of employees are involuntarily terminated and 'offered additional consideration for their decision to sign a waiver'"; such a program is typically "a standardized formula or package of benefits that is available to two or more employees." *Recchia*, 951 F. Supp. 2d at 692 (quoting 29 C.F.R. § 1625.22(f)(1)(iii)(A)–(B)). Section 626(f)(1)(H) requires "employers to provide employees who are terminated as part of a termination program . . . with information about the program," particularly "the criteria for eligibility for the program" and "lists of the ages and positions of both employees who were terminated through the program and those who were retained." *Id*.

Plaintiff attached to her Complaint a document that shows she was terminated as part of an employee termination program. (Compl. Ex. F at 32.) This document which fulfills the requirements of § 626(f)(1)(H): it states that it provides information in accordance with OWBPA, lists the decisional unit for the termination program as the Service Division, and states that selection criteria for termination included "business needs, job performance, skill set and position elimination." (*Id.*) It further states that employees selected for the termination program are being asked to sign a waiver and release agreement, and are being asked specifically to waive claims under the ADEA. (*Id.*) Finally, it includes a comprehensive list of job titles and ages of employees who were selected and of those who were retained. (*Id.* at 32–40.)

Plaintiff argues that, despite otherwise meeting § 626(f)(1)(H) requirements, the document is invalid because it incorrectly lists six, rather than five, people within her division. (Pl. Resp. at 5.) However, this allegation of error is unsupported. In her Complaint, Plaintiff reported that she and two others worked as Medical Policy Analysts. (Compl. ¶30.) Under the "Medical Policy Analyst" heading in the termination program document, three employees are listed, along with a notation that two will be retained and one will be terminated. (Compl. Ex. F at 36.) Rather than constituting error, this is consistent with Plaintiff's own factual allegations, and in no way prevents the document from meeting requirements under § 626(f)(1)(H).

As the executed waiver meets all requirements under § 626(f)(1), the Agreement is valid under the OWBPA, and waives Plaintiff's ADEA claim. Thus, dismissal is also warranted as to this claim.

**IV.   CONCLUSION**

For the reasons detailed above, Defendant's Motion to Dismiss (Doc. 2) is GRANTED. An accompanying Order shall issue.

Dated: 7/20/2020 /s Robert B. Kugler
ROBERT B. KUGLER
United States District Judge